IN THE UNITED STATES DISTRICT COURT FOR THE
WESTERN DISTRICT OF OKLAHOMA

| | | |
|---|---|---|
| JEFFREY TODD PIERCE, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | No. CIV-05-1519-C |
| | ) | |
| JOYCE GILCHRIST; | ) | |
| ROBERT H. MACY; and THE CITY OF | ) | |
| OKLAHOMA CITY, OKLAHOMA, | ) | |
| | ) | |
| Defendants. | ) | |

MEMORANDUM OPINION & ORDER

Defendant City of Oklahoma City has filed its objection to reports and proposed testimony of numerous experts. Plaintiff has responded.

STANDARD OF REVIEW

Federal Rule of Evidence 702 governs the admissibility of expert testimony:

> If scientific, technical, or other specialized knowledge will assist the trier of fact to understand the evidence or to determine a fact in issue, a witness qualified as an expert by knowledge, skill, experience, training, or education, may testify thereto in the form of an opinion or otherwise, if (1) the testimony is based upon sufficient facts or data, (2) the testimony is the product of reliable principles and methods, and (3) the witness has applied the principles and methods reliably to the facts of the case.

It is the Court's gatekeeper function to ensure that expert testimony is both relevant and reliable. Daubert v. Merrell Dow Pharm., 509 U.S. 579, 589 (1993); Kumho Tire Co., Ltd. v. Carmichael, 526 U.S. 137, 147 (1999). "Relevance is evaluated based on 'whether [that] reasoning or methodology properly can be applied to the facts in issue.'" McKenzie v. Benton, 388 F.3d 1342, 1351 (10th Cir. 2004), cert. denied, 544 U.S. 1048 (2005) (citation

omitted); see also Fed. R. Evid. 401.  "Reliability is judged by examining 'whether the reasoning or methodology underlying the testimony is scientifically valid,'" McKenzie, 388 F.3d at 1351 (citation omitted), or otherwise principled.

## DISCUSSION

The following discussion of the City's arguments and Plaintiff's responses are organized by expert.

*A.     Richard Bisbing*

Richard Bisbing is a forensic chemist retained by Plaintiff to review documents and hair evidence involved in Plaintiff's criminal case.  Bisbing's report states his opinion that none of the hairs Gilchrist associated with Plaintiff could have come from Plaintiff and details his reasons for arriving at that conclusion and the problems with Gilchrist's hair analysis.

The City's objections to Bisbing's report and proposed testimony appear to be that: (1) his analysis was not peer reviewed; (2) he did not take into account all relevant facts, including Plaintiff's implied waiver of his right to examine the hair evidence before trial; (3) his opinion that Gilchrist is dishonest and a liar conflicts with another expert opinion (of John T. Wilson) that Gilchrist is simply incompetent; and (4) is not relevant because his findings and opinions only suggest that Gilchrist is negligent, which is insufficient for purposes of a claim under 42 U.S.C. § 1983.  These arguments are without merit.

Although Bisbing's analysis was not peer reviewed, the Court is not persuaded that his findings or opinions are unreliable.  Bisbing's hair analysis is consistent with that

performed by FBI Supervisory Special Agent Deedrick and his report identifies his reasoning with reference to forensic science principles and includes analytical explanations. The City is free to explore the peer-review issue with Bisbing on cross-examination, but it is not grounds for excluding either his testimony or his report.

The Court has considered and rejected the collateral estoppel/waiver argument in its order on Gilchrist's motion for summary judgment. Bisbing's failure to account for trial counsel's decisions in Plaintiff's criminal case or the Oklahoma Court of Criminal Appeals' appellate opinion does not detract from his report or call into question the opinions contained therein.

In addition, that another expert interprets basic and repeated errors in Gilchrist's analysis to indicate lack of competence does not suggest that Bisbing's methodology or application are unreliable. Bisbing contends that Gilchrist reached distorted conclusions and evidenced a disregard for the truth (because, for example, her report was contrary to or not supported by her notes). The two positions are not contradictory. And to the extent that a tension exists, that is not grounds for exclusion. See Fed. R. Evid. 702, advisory committee's notes ("When a trial court . . . rules that an expert's testimony is reliable, this does not necessarily mean that contradictory expert testimony is unreliable.").

Finally, the Court does not agree that Bisbing's report is irrelevant because it only suggests negligence on Gilchrist's part. Bisbing's testimony will be considered in conjunction with other evidence, which, if found to be credible, could reasonably support a

jury finding that Gilchrist acted at least in reckless disregard of Plaintiff's constitutional rights.

  *B.*  *Douglas M. Lucas*

Douglas Lucas is a forensic scientist who also directed a laboratory for almost thirty years.  He was retained by Plaintiff to provide opinions related to "the organization and management of a forensic science laboratory[] and generally accepted practices and quality assurance procedures in forensic laboratories as may have been common in the 1980s." (Dkt. No. 60, City's Obj. Ex. B, Lucas Report at 1.)  In preparation, Lucas reviewed a multitude of forensic science-related documents and transcripts.  Lucas's 42-page report describes the operation and structure of the Oklahoma City Police Department and lab in the early and mid-1980s, identifies problems with those as well as publicly- and privately-voiced criticisms, and gives his opinions on how those problems contributed to Gilchrist's actions and alleged unsubstantiated analysis in Plaintiff's case.

The City's lengthy discussion of Lucas's report may be summarized as the following basic objections:  (1) the report is an irrelevant diatribe, largely because events occurring after 1986 are irrelevant; (2) his opinions that specific institutional, procedural, and training program changes could or would have prevented Gilchrist's mistakes in Plaintiff's case are not adequately supported and not reliable; and (3) he is not qualified to give opinions that do not concern forensic analysis and are non-scientific in nature. The Court finds these contentions without merit and/or insufficient to warrant exclusion.

Beginning with Lucas's qualifications, the Court finds that he is competent to testify on matters of forensic science as well as the administration of a forensic laboratory. He was a director of a forensic laboratory during the same time that the investigation and prosecution of Plaintiff occurred. Throughout his report and based on his experience in the field, he refers to what practices, protocols, and quality assurance procedures were recognized and employed in the early 1980s.

Furthermore, his opinions are relevant to issues in this case and the City's liability in particular. The references to post-1986 events are fairly limited and are nonetheless relevant to Plaintiff's allegation that the Oklahoma City Police Department was reluctant to acknowledge problems and/or take corrective actions.

Finally, the Court does not agree that the Lucas report contains unprincipled personal opinions or employs an unreliable methodology. He identifies standards and practices applicable to forensic labs and their administration that were in existence in the early 1980s. He also explains, based on his experience, why certain structural and operational features of the Oklahoma City lab and police department were problematic. Against this backdrop, he arrives at conclusions about how the actions of Gilchrist, a forensic scientist, should be characterized and what role the supervisory structure of the lab, training program, and supervision played with respect to those actions. Although in places Lucas qualifies his statements and indicates alternate explanations/possibilities, his ultimate conclusions are sufficiently definitive to be helpful to the jury. (See, e.g., Lucas Report at 41-42 (stating that he believes that it is more likely that Gilchrist was both not competent as a forensic scientist

and professionally irresponsible and that there "can be little doubt" that proper management would have detected problems much sooner).) The City may contest Lucas's findings and/or conclusions at trial, but exclusion is not warranted on the grounds articulated.

    *C.*    *John T. Wilson*

John T. Wilson is a forensic chemist who reviewed Gilchrist's work in select criminal cases, including Plaintiff's. Wilson was directly involved in three of Gilchrist's cases in the mid-1980s and reexamined some hair evidence. In preparing his report, Wilson also reviewed documents, forensic and otherwise, related to Gilchrist's forensic analysis in some of her early cases. Based on his examination of those materials, Wilson contends, among other things, that Gilchrist was not adequately trained, had a pattern of testifying beyond recognized scientific limits regarding hair analysis and serology, and exhibited bias and deception in her testimony.

The City objects that: (1) Wilson's reference to an Oklahoma City police officer's call to his superiors in the Kansas City Police Department related to Wilson's involvement in the Parker case is irrelevant; (2) Wilson's report is irrelevant because of waiver and the application of collateral estoppel; (3) his reliance on post-1986 materials is improper; (4) Wilson's opinion that the serological evidence excluded Plaintiff is contrary to another expert's opinion and Plaintiff's admission that it merely showed that any male in the population could have been the semen donor; and (5) Wilson repeatedly attempts to attribute blame to the City due to inadequate training but largely ignores the possibility that Gilchrist

"just lied." Again, these arguments are without merit and do not warrant exclusion of Wilson's report or testimony.

With respect to complaints made against Wilson based on his testimony in <u>Parker</u>, Wilson may testify to those events as a fact witness based on his personal knowledge. Such evidence is relevant to Plaintiff's contention that the Oklahoma City Police Department was aware of problems with Gilchrist's analysis before Plaintiff's trial and adopted a retaliatory or dismissive rather than an investigatory position to the concerns raised.

As stated repeatedly, the Court has held that the collateral estoppel doctrine does not apply in this case. In addition, the Court again rejects the City's argument that mention of post-1986 events and documents renders an expert's opinion irrelevant and inadmissible. The claims against Gilchrist are based on her actions and role in the investigation and prosecution of Plaintiff. The City's liability will depend in part on what it did or failed to do to train and supervise Gilchrist during that investigation and prosecution. However, actions taken by the City and Gilchrist before Plaintiff's trial and to some extent afterwards may bear on those issues.

In addition, Wilson's opinion that the serological evidence excluded Plaintiff is based on his assumption that Gilchrist accurately stated that the semen donor was a non-secretor and, thus, indicated that she had a sufficient quantity of semen to analyze. Hence, Wilson's opinion is not in conflict with other expert evidence that the serological data contained in Gilchrist's report could not exclude any male in the population as the semen donor. The latter view credits the analytical findings and omissions in Gilchrist's report and the former

depends on Gilchrist's later assertion that the semen donor was a non-secretor and the necessary implication of that statement.

Finally, the City may take issue with Wilson's opinion that the City's actions permitted or allowed Gilchrist to do what she did. However, the Court finds that Wilson has stated and supported his findings and the conclusions drawn therefrom with sufficient clarity for purposes of Rule 702.

    *D.    Other Experts*

        *1.    Judge Michael D. Marcus*

The City objects to the report of Judge Michael D. Marcus as it relates to his opinion regarding Gilchrist's credentials to testify. (City's Obj. at 2.) Except for arguing that Plaintiff waived the issue of Gilchrist's credentials by failing to challenge her expertise at trial (id. at 11), the City makes no other argument in support of its objection. The waiver/collateral estoppel argument is without merit. Further, in his response, Plaintiff states that he:

> does not intend to elicit any opinions from Judge Marcus regarding the credentials of Joyce Gilchrist to testify as an expert except to the extent that it pertains to any duties the District Attorney's Office had to make an independent determination regarding the credentials and qualifications of experts that it sponsored to the court.

(Dkt. No. 77, Pl.'s Resp. at 2.)

> 2.  *Brian Wraxall, Thomas Fedor, Gary Harmor, Douglas Deedrick, Mel Hett, and Jamie Yorkston*[*]

Brian Wraxall, Thomas Fedor, and Gary Harmor are all forensic chemists who were retained by Plaintiff and have provided reports related to the serological evidence and Gilchrist's analysis of that evidence in Plaintiff's case. Douglas Deedrick, Mel Hett, and Jamie Yorkston are also scientists who have generated reports that Plaintiff may use at trial. The City argues, as it does with respect to other experts, that the reports and opinions of these experts are not relevant because of Plaintiff's waiver of certain arguments and rights at trial. For the reasons already stated, that argument is without merit. These reports contain findings and opinions that are relevant to the fabrication of evidence issue and Gilchrist's competence as a forensic chemist and pattern of behavior in criminal cases in which she participated.

## CONCLUSION

Accordingly, the City's Objection to Plaintiff's Expert Witness Reports and Use of Said Experts (Dkt. No. 60) is OVERRULED. To the extent that Defendant Macy adopted the City's arguments in his objection (Dkt. No. 74), those are OVERRULED as well.

IT IS SO ORDERED this 16th day of January, 2007.

_____
ROBIN J. CAUTHRON
United States District Judge

---

[*] The City also summarily objects to the report of another non-retained expert, "Overton." (City's Obj. at 2.) However, it is not clear who Overton is. He or she is not listed on Plaintiff's Rule 26(a)(2) list. (See id. Ex. 1.)